23-3225 International Brotherhood of Boilermakers v. Jones. Good morning. Oh, yeah. Just so we don't get interrupted. I'll let you know. Good morning. Matt Vianello on behalf of the appellant Newt Jones. And I'm going to reserve three minutes for rebuttal. This case, the defendants in this case have done everything they can to disregard the rules of procedure to get the result that they wanted, which is to remove the international president from his role. And it's a fundamental issue of due process throughout this. And it reminds me of something that I read, Judge Hartz, that you wrote, which is, what justice would there be in a society whose members could not resort to the resolution of disputes by a tribunal that must apply neutral principles in a consistent manner? I wonder who I quoted for that. I think it was yours. It was a Denver Law Review article. Oh, OK. Not presidential. No. Nobody joined that. No, not presidential.  So the issues that we have here along the way are numerous. Basically, the defendants in the case have taken the position that they are supreme in every respect and, by and large, pick and choose parts of provisions of the International Union Constitution that support them to the disregard of basically anything that is contrary. So starting with filing charges, they are, at the outset, the charges that were alleged were not specific at all. There are a number of cases that address this, that you need time, place, date, and that failure to do that is inherently prejudicial. Now, that gets into the LMRDA issues. But from a constitutional interpretation standpoint, at the outset, the defendants declared that an office of the president was partially kind of vacant for a limited period of time and appointed somebody to do certain roles of the international president. There is no authority in the Constitution that says that you can do that. Doesn't Article 17 give the IEC exclusive jurisdiction over charges against IBB officers? Yes, Judge. I mean, it seems sort of strange that you'd argue that, well, Mr. Jones is the one that was stealing all the money, theoretically, but he's the only one that can do anything, and nobody else can do anything because he's the president. Well, so I think that that is, to some extent, a narrow view, that exact same section that you're referring to, 17.3.2. Can you pull the mic over a little bit? Sure. So that same provision that you were referring to, 17.3.2, says the Executive Council has exclusive jurisdiction. It also says any member of, it says the Executive, where is this, Executive Council shall have exclusive jurisdiction to hear charges against a subordinate body and against an international president. And then it says any member of the Executive Council who is directly involved in the proceedings so that the council member cannot function in an impartial manner shall not participate or be subject to a challenge. Now, that provision cannot be read in isolation because there are other sections, conduct of the hearing, that says that the required, it actually gives the international president authority to appoint. But the international president is the defendant. Yes. And it seems really strange to say the defendant is going to tell us how everything is going to be done here. And there is. And there is a number of safeguards. So one thing that happened here, so let me go back a second and say there has to be a constitutional provision that says it. There's nothing that says that you can appoint somebody in the manner that this was done here. Now, I understand that there's a conflict, potential conflict of interest, so it's important to look at what actually happened. Newton Jones did not schedule a hearing. He did not dismiss the charges. He did not take any action except to appoint other people to fill his role, which is his exclusive authority. Now, Judge Kelley, to your point, there are a number of safeguards within the Constitution that allow for an orderly processing of this matter. So, for example, in Article 5.8, I believe, or 5.2, it says that any decision or action by the international president can be appealed, proper appeal, that is, to the International Executive Council. So if there's no decision that's made, if there's some decision that's made, if there's something that's done that they don't like, there is an orderly process that you can follow. To appeal a determination of interpreting the Union Constitution, right? It's actually, so that is Article 7.2 that says all decisions shall be binding unless reversed by the Executive Council, or appeal to the Executive Council, but it's actually broader than that. So in Article 5.2, which outlines the powers and authorities of the IEC, it says, it shall have the power to pass on any subject, proposition, or grievance, and hear and determine all cases of appeal from the decisions and rulings of the international president, which are filed by registered or certified mail. That's not limited to interpretation. Okay, but doesn't Article 1.5 say when the IBB is not in convention session, the executive, i.e. appointing an investigator, like Creeden and McManaman, and judicial powers are vested in the Executive Council. Not in the international president. But you can't read all those provisions in isolation, so you have to look at the entire Constitution. And so, first off, Article 1.5. I have a fundamental question here. Yes, Judge. That the Executive addressed before we start interpreting the Constitution. Because I, in this case, I'm looking at various provisions of the Constitution, trying to figure out, for the reason and manner you're talking about, how to interpret it. But that's not our job. We defer to the Union for interpreting the Constitution. And as long as it's not unreasonable, it may even be a more lenient review than that, we adopt the Union's interpretation. The question here is, who's the Union? And what occurs to me is, the only purpose for our interpreting the Constitution is to find out, in this circumstance, who is the Union. Is it President Jones, or is it the IEC? Do you agree that that's what we're supposed to do? I think that that is, so, yes. I think there is a little more than that when it comes to LMRDA impartiality. But as far as... If you're relying on the NLRA, then yes. Yes. So, to your point, and yes, you can disagree with an interpretation. The case law is pretty clear. The courts don't have to agree with it. They can only reject it if it's patently unreasonable. Patently unreasonable is what you think is the test? I think there's two tests, I believe, but let's just go with unreasonable. Okay.  And so the starting place is, there is an element of looking at the Union Constitution that the court has to do. So, the first question is, who has the power to interpret? And that provision is clear, which is that the Union President is the one who interprets it. Now, Judge Hartz, to your question, or I think Judge Bachrach, you brought it up, there is some general provisions in Article I, and then there are very specific provisions about what the IEC does, what the International President does. And that's in Article VII, and it delineates what their power and authority is. But one of them that is expressed is that the President gets to interpret the Constitution. Now, the safeguard here, to your point, Judge Kelly, or to what you were asking, if there's an interpretation that somebody doesn't like, and this isn't even before it gets to the court, but if somebody doesn't like that interpretation, action of the International President, it can be appealed. But there has to be a proper appeal. And what's happened in this case is the certain members of the IEC have said, our interpretation controls. The International President doesn't get to interpret. And the question that I have there is, where in there in the Union Constitution does it say expressly that the IEC gets to interpret? And there is one place which is on a proper appeal. Well, I think, I wish I thought I'd written down the provision. But very early in the Constitution says the, I think the legislative and executive authority of the Union is vested in the IEC. Do I have, maybe you've already said that. I do. So it's, and this is actually a limiting provision. Okay, so it says powers of the International Brotherhood. This is 1.4, and I referenced this in my reply brief. 1.4, powers of the International Brotherhood while in convention shall be legislative, executive, and judicial. Then it has vesting of powers 1.5. When the International Brotherhood is not in convention, its executive and judicial powers only shall be invested in an international executive council. Now, that's a limitation because it takes out this judicial aspect, but. Takes out the legislative. Legislative aspect. I'm sorry. Now, the point here, though, is if that is carte blanche authority, then why even have an Article 7? Why even say that the international president is authorized to interpret? And then say that interpretation can be overturned on proper appeal to the executive council? Why have that at all if, just stop at 1.5? Okay, let's just say everything, you know, we're with you. Everything you just said. Where in the record did President Jones hear and determine any constitutional provision? You know, you refer to his actions. He certainly acted. Mr. McManaman and Mr. Creighton, but where did he hear arguments? So I don't know if there was, like, if he had appealed, like, there was no hearing and determination of any interpretation of a constitutional provision to appeal under Rule 7.2. There are certainly interpretations that had been made, and those are outlined. Where? That's what I'm asking. Where in the record? So in the record, there is not a specific instance of at the international union level before the, where there was an argument about what is the interpretation of this, okay? But you also have to look at Article 7.1, which talks about that the international president is the chief executive. His decisions, basically, in all of these provisions throughout the Constitution, there's a subordinate aspect with the IEC. And so, but let's take your point, Judge Bagrat. So if we say that there has to be this specific instance where there has to be an interpretation, where there has to be some event that occurs where a question of an interpretation comes up, okay, fine. If that's the case, then how is it that the IEC can just interpret on its own without having to do anything? And so. Well, because the point is that Article 1.5 doesn't say, doesn't have that here language. What it does say is that whether it's limiting or affirmative vesting of power, that the executive and judicial powers are vested in the IEC, and in the actual decision on June 2nd, the decision itself is replete with actual interpretations of specific constitutional provisions. They did exactly what President Jones failed to do. Well, I disagree with you there because there are a number of letters that are cited throughout the brief where he starts off specifically and says Newton Jones, President Jones. Except Section 17.3.2 restricts Jones' ability to participate in the proceedings. Well, it also. It's either in or he's out, and he's out based on that. What is the proceeding? So that's the hearing. So how is it that anything he's done before that is the. You don't think the appointment of who's going to conduct the proceeding is part of the proceeding? If that's part of the proceeding, then so is one of the members showing up there to form part of the quorum. If that's participating, then so is Fultz showing up and serving as part of the quorum. You can't have it where his participation stops at one point and he can't do anything, but then another person can show up and be part of a quorum, make up a quorum, and say, well, we get to proceed. So what's good for the goose is good for the gander. They both really violated the provision. Because I don't. I mean, I understand your argument. That's exactly what you said in your brief, but I really didn't hear it answered to my colleague's question. I mean, what I heard you say is, well, if they did it, then they did it. I mean, that's what my kid says.  Well, and I'm over my time here, but if I can address this. Let's get this straightened out. Sure. So the proceeding itself, where does it start? Does it start with the filing of the charges? How far does that go? And so you're asking about the proceeding. There's nothing that says that there's an automatic exclusion, and I addressed this in the brief. The reason why there's an impartiality provision, this goes to the LMRDA, is to protect due process rights. So I don't agree that that is, that anything that happened before the actual hearing is the proceeding. Now, and I also don't agree that there's an automatic exclusion. And so it says, Judge Kelly, it says in there that if you, that you shall not participate or be subject to challenge, which means that there is no automatic exclusion. 17.3.2 says the Executive Council shall have exclusive jurisdiction to hear charges against subordinate bodies and international offices, and any member that is directly involved cannot function in an impartial manner, shall not participate or be subject to a challenge for cause. And it's that second part, or be subject to a challenge. We're going around in a circle. I mean, I disagree. The part where it says or be subject to a challenge for cause is a limitation. It means that it does not happen automatically. If it happened automatically, saying anybody who's involved is out, you wouldn't have the language that follows or be subject to a challenge for cause. And again, that provision cannot be read in isolation, because you have everything else that says the International President does this, the International President does this. And I understand it's against... But the International President can't take money that he shouldn't take. Sure. I understand that. And there's still due process rights of an accused to be... Well, speaking of due process rights, he never showed up to any of the hearings. He sort of waived all those due process issues. Well, unless that hearing wasn't a legitimate hearing. Why wasn't it a legitimate hearing? Well, it wasn't a legitimate hearing because they didn't have a quorum.  So that's one issue. It wasn't a legitimate hearing because there were representatives who showed up who weren't allowed to review evidence. Well, they denied they were representatives. Specifically said, we're not representing Mr. Jones. But then the IEC said they were representatives. No, they didn't. They let them watch. They were members. They let them watch. They were not allowed to participate. Well, I think what they said was... Maybe it was just my interpretation was, Jones, they were there because as representatives of Mr. Jones, maybe I've got my kid in the section. My kid is there as a spectator, as my representative. But it doesn't mean that my kid is authorized to get up and participate and say, I'd like to see all of the evidence that was presented in this case. Sure. And so I think they were just trying to say, Jones obviously knew about this hearing. Well, so to answer your question more fully about this, why it was an illegitimate hearing, you had issues of being able to call a meeting. Do we really? It's addressed in the brief. Yeah. I think you need to go. Okay. Thank you. Thank you. Mr. Rosenfeld. Good morning. I think it is still morning. It's David Rosenfeld on behalf of the Appalese, the four IVPs. I've argued many circuit courts... Pull the microphone down a little bit over your... There you go. Thank you. I've argued many cases, and I've never heard an opposing colleague dig such a deep hole for himself. Judge Kelly, you're right. The Constitution is extremely clear that the IEC has exclusive jurisdiction over charges against subordinate entities, which wasn't involved, or a member of the IEC, of which there's six. And that's from the get-go. And in this case, Mr. Jones tried to avoid that command by appointing his own dubbed Article 17 committee and appointing his friends to that committee, when automatically the IEC had control. Now, counsel made an argument that dug even a deeper hole for himself by saying it says, or subject to challenge. And what that really means is if that international officer insists on participating, even though they are automatically disqualified, they can be challenged. So that reaffirms the proposition that if the charge is against you, you're automatically disqualified. You can't take action. The IEC then controls the process. And I think that ends the case. And Judge Milgren began his analysis when he issued the declaratory relief from exactly the question Judge Kelly, you asked, which was, does the IEC have control of this? Which it has to. But what if it makes the decision at a meeting or a hearing where there's no quorum? Well, Judge Milgren addressed that question. I'd like you to also. Okay. And what he said was that the way he read the Constitution, the word quorum, was that there were four members of the IEC present, which is a quorum of six. He didn't dispute that. One of the four was John Foltz, the international vice president, who was there to participate as the charging party, but not to vote. And Judge Milgren probably held that four is a quorum, and that met the standard. I just want to. What if we disagree and think that there were only three there because someone who's disqualified because he's participating doesn't count toward the four? What do we do then? We have two answers to that. One is that's all waived because Jones never showed up, didn't protest, didn't raise the question, and so he's sort of waived or abandoned. You actually have to show up at a hearing, and then you're going to. But he is damned if he does, damned if he doesn't. Because he's a member of the IEC. So if he shows up, then he is the fourth member. He has now satisfied the quorum requirement. Well, I can avoid he's damned if he does, damned if he doesn't, because he was well aware of these proceedings, but he took the tactical position that his own self-appointed Article 17 committee would proceed. So all he had to do, Your Honor, was simply write a letter, which he was fully capable of doing, saying that there would be no quorum if Larry McMillan doesn't show and John Forbes can't participate. Or the day after the hearing or two days later when he got the decision saying this is invalid because there was no quorum. And because of his tactical decision not to comment, not to get involved, but to rely upon his self-appointed committee, he never raised those questions. What's your other basis besides waiver? Well, the fact that the IEC held in its decision that it was properly constituted, and it also held that he waived any procedural rulings, and the IEC was fully authorized to do that. I'm sorry, did it specifically say that there was a quorum? No, it just addressed, it said broadly that any procedural issue has been waived. And I think there's something else that counsel sort of dug himself a deeper hole in with respect to the power of the IEC, and that's in Article 5.2, which defines the powers of the Executive Council, the IEC. If I can just read the sentence here, it says, it shall have the power to pass on any subject, proposition, or grievance. Pretty broad. And then it goes on to say, and hear and determine all cases of appeal decisions. So it has two powers. One is to pass on any subject, proposition, or grievance, or secondly, to hear and appeal. So when it acted to issue its decision early, Jim, it was authorized to do so by the language of 5.2. And I think there's a point that I can make kind of having represented unions for a long time that I think is evident in this constitution, that some constitutions give a lot more power to the executive. Maybe this reflects some national politics too. Others give more power to the executive board than the executive committee. And others split it. And I think, Judge Kelly, when you pointed out that Article 1.5 says, when the international brotherhood is not in convention, because ultimately the convention is the union and controls what goes on, its executive and judicial powers are vested in the International Executive Council, not in the president. In other words, not in the president. They aren't there. But this union says, we're going to give to the six members of the IEC. And keep in mind, structurally, the IEC has five vice presidents who are elected and the international president. So the international president has some power as part of the IEC, but ultimately this union is controlled during the five years between conventions, because international unions usually hold conventions every five years, by the IEC. And it has both judicial and executive power. It does not have legislative power, which means to amend or change the Constitution. And that's the way this union functions. If counsel is corrected, you look at the whole Constitution and there are many provisions in the Constitution which say things can happen subject to appeal or approval by the IEC, which reaffirms my view, and I'm going to make it to your honors, but this union is based on this kind of system where the IEC, the six members, control the union, and in this case, 17.3 got involved because there were charges against the international president. And so he was automatically disqualified. So the rest of the process was left to the remainder of the IEC, the five other members, the vice presidents, because he was automatically disqualified from taking any action, including setting up this self-dubbed Article 17 committee. And I stand here before you sort of sad about this case because of what happened here, not because of the process we used, but what is reflected in what was going on in this union. And I think the executive counsel thanked John Foltz for bringing these charges, and what you saw on the record was that when they started bringing these charges, Milton Jones retaliated against them. He took away certain responsibilities that these international vice presidents had, brought his own Article 17 charges, and then when a hearing was held where he could have shown up to explain why he was traveling to Ukraine on the union dime, why he was having all these meals around his home, why he gave his wife a substantial salary increase while she was living in the Ukraine, he chose not to do so. And although the record doesn't reflect the reason, I think it was quite clear why he chose not to show up, because as revealed in February, when this whole thing came to just a concern. So I'll just conclude by saying that this union acted promptly, responsibly. Judge Milgren saw that. I just want to point out that Judge Milgren handled this thing in an expedited manner. The first day we showed up, he says to the lawyers representing the IBB, you can't represent the IBB. He then set another hearing date, denied our primary injunction request, but said I got to get this resolved, and then granted the declaratory leave. But by that time, Milton Jones had left the union, and so part of this is moot because he voluntarily left. It hasn't ended this dispute, but that's the status. So unless there are questions, I'll rest. Thank you. Thank you. I think I'm out of time unless there's questions. No. Cases submitted and counsel are excused. Thank you.